

(12)

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**SACRAMENTO DIVISION**

In re:

**JEFFREY W. SWENSON and LAURIE D. SWENSON,**

Debtors.

Case No. 05-33004-C-7
Chapter 7

GERALD I. AINSWORTH,

Plaintiff,

vs.

WARREN E. SWENSON and VICKY L. SENELLA,

Defendants.

Adversary No.: 07-02083 ✓

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**Introduction**

The consolidated trial of this adversary proceeding and a related adversary proceeding, Eastern District of California Case No. 05-02350, was held on October 1-2, 2007. Testimony was heard and evidence was received. Additional briefs and proposed findings were requested by

Friday, November 9, 2007, and objections to proposed findings were requested by Friday, November 23, 2007, at which time the case was submitted for decision. A two week extension was granted thereby extending the filing deadline for proposed findings until November 23, 2007 and objections to proposed findings not due until December 7, 2007. All of the proposed Findings filed by the Plaintiff and all the Objections to the proposed findings filed by the Defendant have been considered along with the Courts review of the testimony, the documents and the Court's own recollection in preparing these Findings of Fact and Conclusions of Law. The consolidation was not substantive, but for purposes of trial only, and therefore these findings and conclusions shall relate only to this adversary proceeding.

Any Conclusions of Law therein stated that are more properly characterized as Findings of Fact, shall be treated as Findings of Fact. Any Findings of Fact herein stated that are more properly characterized as Conclusions of Law, shall be treated as Conclusions of Law.

## Appearances

In this adversary proceeding, plaintiff/Chapter 7 Trustee, GERALD I. AINSWORTH ("Trustee") was represented by J. Russell Cunningham; and defendants WARREN SWENSON ("Warren") and VICKY SENELLA ("Vicky") were represented by W. Steven Shumway. In the related adversary proceeding, plaintiff UNITED STATES OF AMERICA - DEPARTMENT OF JUSTICE, TAX DIVISION ("IRS") was represented by Adam F. Hulbig and G. Patrick Jennings; defendants JEFFREY WARREN SWENSON ("Jeffrey") and LAURIE DEE SWENSON ("Laurie") were represented by Richard Todd Luoma; and Warren and Vicky were represented by W. Steven Shumway.

## I. FINDINGS OF FACT

### A. Debtors' Federal Tax History

1. Jeffrey and Laurie (collectively referred to herein as the "Debtors") have incurred in excess of $800,000 in federal income tax liabilities between 1993 and 2004. Trial Transcript, October 1, 2007 (31:13); Duff ADT (2:13); Exhibits 2-7.

2. Although Debtors filed tax returns with the IRS for each of these years, Debtors have made no voluntary payments towards their tax debts during this period. Duff ADT (2:22-

3:13); Exhibit 1.

3. Several of the returns were audited and substantial additional tax was assessed. Duff ADT (3:20-27), (4:01-4:20).

4. Because Jeffrey is self-employed, he is also required to make estimated tax payments. Duff ADT (3:13); Exhibit 1.

5. Between 1993 and 2004, Jeffrey did not make any estimated tax payments. Duff ADT (3:13).

**B. <u>Background</u>**

6. Jeffrey began his career as a carpet installer in 1986.

7. Laurie has not been employed since 1994. Trial Transcript, October 2, 2007 (3:15-16).

8. Debtors were married in 1988, after which they moved to a house in Palmdale, California. Trial Transcript, October 2, 2007 (2:15).

9. The house in Palmdale was purchased and title was taken in the name of both Jeffery Swenson and James Calderon, Jeffrey's Mother's ex-husband. Trial Transcript, October 1, 2007 (111:20-120:12).

10. James Calderon was on the title to the house for the sole purpose of aiding Jeffery Swenson in qualifying for the loan. However, the Debtors were the sole equitable owners of the house in Palmdale. Trial Transcript, October 1, 2007 (111:20- 120:12).

11. During the late 1980s and early 1990s in Palmdale, Jeffrey was working as a carpet installer for new housing projects on a contract-by-contract basis.

12. In this capacity, Jeffrey failed to report on IRS Form 1099 non-employee compensation of individuals he hired and paid to assist him with his installation jobs. Duff ADT (4:15-27); Exhibits 3-7, 8 ( page12).

13. In 1994, Debtors filed their first voluntary Chapter 7 bankruptcy petition in the San Fernando Valley Division of the Central District of California, and received a discharge. Trial Transcript, October 1, 2007 (111:29); Exhibit 1( page 1).

14. Thereafter, the IRS and California Franchise Tax Board ("FTB") separately audited

Jeffrey's business operations for tax years 1995 and 1996. Trial Transcript, October 1, 2007 (115:09-25); Exhibit 28.

15. The audits of Jeffrey's carpet installation business resulted in the imposition of additional tax in excess of what Debtors reported to the federal and state taxing authorities for 1995 and 1996. Trial Transcript, October 1, 2007 (113:03-06); Exhibit 33.

16. In mid-1997, Debtors moved to Roseville, California, and rented a home in the name of Warren Swenson. Trial Transcript, October 1, 2007 (114:18-20).

17. Warren is Jeffrey's father. Trial Transcript, October 2, 2007 (2:20).

18. Warren had a Bank of America business checking account ("BofA")which he had previously opened in the Los Angeles area and used for business. Transcript, October 1, 2007 (213:20).

19. Jeffrey had been allowed to use the BofA account that was maintained in Warren's name until such time as the account was closed due to Jeffrey passing several bad checks on the account. Warren Swenson was subsequently reported to Check Systems. Transcript, October 1, 2007 (213:20-214:25).

20. After relocating to Roseville, Jeffrey immediately began working for Warren as a carpet installer. Trial Transcripts, October 1, 2007 (114:20-21).

21. Warren is married to Vicky. Trial Transcript, October 1, 2007 (114:20-21); Trial Transcripts, October 2, 2007 ( 2:21).

22. Jeffrey is married to Laurie. Trial Transcript, October 1, 2007 (114:20-21); Trial Transcript, October 2, 2007 (2:13-20).

23. Vicky is Jeffrey's step-mother. Trial Transcripts, October 2, 2007 ( 2:22).

24. Vicky is also Laurie's sister. Trial Transcripts, October 2, 2007 ( 79:13-21).

25. Warren and Vicky were aware that Debtors had moved away from Palmdale because of their financial troubles.

26. Debtors lived in the Roseville rented home from mid-1997 until September 1999, at which time they moved into a house located at 2809 Club Drive, Rocklin, California ("2809 Club Drive"). Trial Transcripts, October 1, 2007 (119:14-16).

27. The legal description of 2809 Club Drive is:

Lot 5, as shown on the Map of "Stanford Ranch Phase II Unit 1 Lot 11," filed October 18, 1989, in Book "Q" of Maps, at Page 58, Placer County Records.

EXCEPTING THEREFROM all oil, gas and other hydrocarbon substances, inert gases, minerals, and metals, lying below a depth of 500 feet from the surface of said property, whether now known to exist or hereafter discovered, including but not limited to the rights to explore for, develop, and remove such oil, gases, and other hydrocarbon substances, inert gases, minerals, and metals, however, any right to use the surface of said property, or any other portion thereof above a depth of 500 feet from the surface thereof, for any purpose whatsoever as reserved by Stanford Ranch, Inc., a California Corporation in a Deed recorded August 17, 1989 as Instrument No. 44576, Official Records. Exhibit 30.

**C. <u>Vicki Senella's WFB Account</u>**

28. Since Debtors moved to Northern California, and Jeffrey began working for Warren, all of Jeffrey's earnings have been held in a Wells Fargo Bank checking account ("WFB Account") maintained in the name of Vicky, but controlled by Warren. Trial Transcripts, October 1, 2007 (213:01-12); Trial Transcripts, October 2, 2007 (94:16-95:18).

29. From time to time, and at Warren's discretion, portions of Jeffrey's earnings were retained in the WFB Account. Trial Transcripts, October 1, 2007 (223:15-18).

**D. <u>2809 Club Drive</u>**

30. In September 1999, using funds held in the WFB Account for Jeffrey's benefit, a $1,000 deposit and closing costs of approximately $3,335.00 were paid toward the purchase of 2809 Club Drive. Trial Transcripts, October 2, 2007 (95:16-97:02); Exhibit M.

31. Warren and Vicky took title to 2809 Club Drive. Exhibit 31.

32. Warren and Vicky applied for, and were granted, "owner-occupied" based loans for 100% of the purchase price of 2809 Club Drive. Trial Transcripts, October 1, 2007 (195: 4-13).

33. Debtors have had exclusive possession, use, and enjoyment of 2809 Club Drive. Trial Transcripts, October 2, 2007 (119:17-120:05).

34. Warren and Vicky have never possessed, used, or enjoyed 2809 Club Drive. Trial Transcripts, October 2, 2007 (194:14).

35. Debtors paid some of the mortgage and real property tax obligations for 2809 Club Drive directly from their own personal checking account. Trial Transcripts October 2, 2007 (9:26-

10:10); Exhibit 29 pg. 20.

36. Debtors paid the balance of the mortgage and real property tax obligations for 2809 Club Drive indirectly from funds held for Jeffrey's benefit in the WFB Account.

37. No funds in which Warren and Vicky have had a beneficial interest were used to pay any of the mortgage and real property tax obligations for 2809 Club Drive. Trial Transcripts, October 1, 2007 (222:01-03), Trial Transcripts, October 2, 2007 (40:04-18).

38. For the tax years 2000 through 2005, Debtors claimed as deductions against income all mortgage interest and property tax payments made for 2809 Club Drive, both those made directly from Debtors' account and those made indirectly from the WFB Account. Trial Transcripts, October 1, 2007 (34:04-25, 123:04-124:03); Duff ADT (12:02-15); Exhibits 3-7.

39. Warren and Vicky have never claimed any tax deductions, reported any income, and taken any depreciation for 2809 Club Drive. Trial Transcripts, October 2, 2007 (85:25-86:02).

40. All utility, maintenance and upkeep expenses for 2809 Club Drive have been directly paid by Debtors from a Wells Fargo checking account in the name of Laurie and Jeffrey Swenson. Trial Transcripts, October 2, 2007 (8:20-9:14).

41. Warren and Vicky have never paid any utility, maintenance or upkeep expenses for 2809 Club Drive. Trial Transcripts, October 1, 2007 (222:01-03).

42. Warren advised the tax preparer used by all four parties, that Debtors were the equitable owners of the 2809 Club Drive. Trial Transcripts, October 2, 2007 (58-03); Exhibit 39 ADT of Gary Wurst, (3:8-20).

43. In connection with a re-finance of 2809 Club Drive in October 2002 , Debtors paid the appraisal fee directly from their own account. Trial Transcripts, October 2, 2007 (24:23-26:25); Exhibit 29 (page 65); Exhibit 15 (page 110).

44. The $48,590.33 re-finance proceeds were deposited into the Vicky's WFB Account. Trial Transcripts, October 1, 2007 (226:8-17).

45. Warren and Vicky consumed the re-finance proceeds. Trial Transcripts, October 1, 2007 (224:03-24)

**E. Other Nominal Arrangements**

46. Between 1993 and 1999, on behalf of Debtors, Warren served as nominal lessee of a 1993 Nissan Pathfinder that was exclusively used, paid for, and maintained by Debtors. Trial Transcripts, October 1, 2007 (133:2-134:20).

47. Between 1999 and 2004, on behalf of Debtors, Warren served as nominal lessee of a 1999 Jeep Cherokee that was exclusively used, paid for, and maintained by Debtors. Trial Transcripts, October 2, 2007 (16:15-19).

48. During the period February 2001 through December 2001, Debtors made regular and substantial use of separate American Express credit cards on an account in Vicky's name. Trial Transcripts, October 1, 2007 (172:02-16) Trial Transcripts, October 2, 2007 (4:20-5:02) Exhibit 17( Page 9).

49. Warren, Vicky, Jeffrey and Laurie, entered into the foregoing nominal business arrangements, including title to the 1993 Nissan Pathfinder, 1999 Jeep Cherokee, 2809 Club Drive, use of the WFB Account and American Express cards both in Vicky's name , and transfer of the re-finance proceeds, for the purpose of defrauding Debtors' creditors, including IRS.

**F. Debtors' Second Bankruptcy Case**

50. Jeffrey and Laurie, commenced the above-captioned parent bankruptcy case by filing a joint voluntary Chapter 7 petition on September 28, 2005. Exhibit 12 Page 1.

51. Trustee is the duly appointed Chapter 7 trustee of Debtors' bankruptcy estate.

52. The schedules disclose no claims held by Warren and Vicky against Debtors. Exhibit 12 (Schedules A-J).

53. The schedules disclose no leases between Debtors, Warren and Vicky. Exhibit 12.

54. The statement of financial affairs discloses no payments by Debtors to Warren and Vicky within one year before the petition was filed. Exhibit 12.

55. The statement of financial affairs discloses no property transfers by Debtors to Warren and Vicky within one year before the petition was filed. Exhibit 12.

56. On April 9, 2007, Trustee filed a Complaint seeking the relief set forth therein.

57. On June 1, 2007, Warren and Vicky filed an Answer to Complaint denying the

claims set forth in the Complaint.

58. The Trial commenced on October 1, 2007 and concluded on October 2, 2007.

59. Before the Trial was concluded, to conform to the evidence presented at trial, Trustee filed a First Amended Complaint seeking: (a) turnover of 2809 Club Drive pursuant to bankruptcy law; (b) a declaration that Warren and Vicky have no beneficial interest in 2809 Club Drive; and (c) determination, avoidance and recovery, under state law, of $48,590.33 fraudulently transferred to Warren and Vicky in connection with an October 2002 re-finance of 2809 Club Drive.

## II.

## CONCLUSIONS OF LAW

### A. Jurisdiction and Venue

60. Jurisdiction is proper pursuant to 28 U.S.C. § 1334(b) and (e) in that this is a civil proceeding arising in a parent bankruptcy case and this court has exclusive jurisdiction of all property, wherever located, of the debtors as of the commencement of the parent bankruptcy case, and of property of the estate. Venue is proper pursuant to 28 U.S.C. § 1409(a) because this adversary proceeding arises in a parent bankruptcy case that was pending in this judicial district at commencement. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E) and (H) because this matter concerns turnover of property of the estate and relates to determination, avoidance, and recovery of a fraudulent conveyance.

### B. Burden of Proof

61. Trustee bears the burden of proof, by a preponderance of the evidence, as to all of the relief sought in the First Amended Complaint. *Sanchez-Martinez v. I.N.S.*, 714 F.2d 72, 74 (9th Cir. 1983) (declaratory relief); *In re Blinder, Robinson & Co.,* 140 BR 790, 793 (D. Colo. 1992) (turnover) *Vaughn v. Coccineglio*, 241 Cal. App. 2d 676, 679 (1966) (fraudulent transfer). The burden of showing something by a preponderance of evidence, the most common standard in civil law, simply requires the trier of fact " to believe that the existence of a fact is more probable than its nonexistence before (he) may find in favor of the party who has the burden to persuade the (judge) of the fact'existence.

**C. Turnover**

62. 11 U.S.C. §542(a) provides that:

"Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control during the case, of property that the trustee may use, sell, or lease under section 363 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate."

63. Warren and Vicky do not contend, nor was any evidence presented, that would support a claim, that Warren and Vicky are custodians, i.e. receivers, trustees, or assignees, within the meaning of 11 U.S.C. §101(11).

64. 11 U.S.C. §541(a) provides in pertinent part that the property of Debtors' bankruptcy estate includes "all legal and equitable interests of [the Debtors] in property as of the commencement of the case." Debtors' petition date property interests become and remain property of the estate, "wherever located and by whomever held."

65. 2809 Club Drive is property of Debtors' bankruptcy estate because, as set forth in detail below, commencing in September 1999 and continuing through the petition date, Debtors were the equitable owners of 2809 Club Drive, notwithstanding Warren's and Vicky's nominal title thereto.

66. As property of Debtors' bankruptcy estate, 2809 Club Drive is property that Trustee may use, sell, or lease pursuant to 11 U.S.C. §363.

67. Warren and Vicky do not contend, nor was any evidence presented, that would support a claim, that 2809 Club Drive is of inconsequential value or benefit to Debtors' estate.

68. Based on the foregoing, the Court concludes that Trustee is entitled to judgment compelling Warren and Vicky to deliver to Trustee, and account for, 2809 Club Drive or the value of such property.

**D. Quiet Title**

69. The presumption that the owner of legal title to real property is the owner of the full beneficial title may be rebutted only by clear and convincing proof. California Evidence Code § 662.

70. The Court concludes the presumption of record title has been rebutted by the

following evidence: (a) Warren is related to Jeffrey by blood and to Laurie by marriage; (b) Vicky is related to Jeffrey by marriage and to Laurie by both blood and marriage; (c) Warren and Vicky have engaged in a pattern of nominal title arrangements, as to other property, including vehicles, deposit accounts, and credit cards for the purpose of facilitating Debtors' defrauding IRS; (d) all of the funds used to purchase, maintain, and keep up 2809 Club Drive were derived from Jeffrey's efforts, regardless of whether such funds were kept in the WFB Accounts in the name of Vicki Senella or the account of Jeffery and Laurie Swenson; (e) at all relevant times, Debtors have continuously used, possessed, and enjoyed 2809 Club Drive to the exclusion of Warren and Vicky; (f) at all relevant times, the tax reporting of deductions and income by all four parties has been consistent only with Debtors' ownership; (g) Warren advised the tax preparer used by all four parties that 2809 Club Drive belongs to Debtors; (h) all utilities have been paid by Debtors; (i) the appraisal for the 2002 re-finance was paid for by Debtors; and (j) Warren and Vicky agreed to hold bare legal title for the purpose of aiding Debtors' continuing fraud on IRS.

71. Trustee has demonstrated by clear and convincing evidence that on the petition date, Debtors were the owners of the full beneficial title of 2809 Club Drive, notwithstanding Warren's and Vicky's legal title thereto.

72. Based on the foregoing, the Court concludes that: (a) the interest of Warren and Vicky in 2809 Club Drive is nominal only; (b) the legal and equitable title of Trustee to 2809 Club Drive is superior to the claims of Warren and Vicky; and (c) as between Trustee, on the one hand, and Warren and Vicky, on the other hand, title to 2809 Club Drive will be quieted in favor of Trustee. (See also the Courts Findings of Fact and Conclusions of Law entered on this date in case adversary number 05-2530 which are incorporated herein by reference.)

**E. <u>Fraudulent Transfers</u>**

73. As set forth in more detail below, Debtors' October 21, 2002 transfer of the $48,590.33 re-finance proceeds to Warren and Vicky is avoidable as both constructively fraudulent and intentionally fraudulent under state law.

74. An avoidable constructively fraudulent transfer is made for less than reasonably equivalent value in exchange at a time when the debtor is insolvent or that renders the debtor

insolvent. California Civil Code § 3439.05. Insolvency is presumed when a debtor is generally not paying his or her debts as they become due. California Civil Code § 3439.02(c).

75. The transfer was constructively fraudulent as to IRS because: (a) Debtors received no value in exchange for the transfer because Warren and Vicky consumed the re-finance proceeds; and (b) Debtors had made no voluntary payments to IRS on account of a substantial and escalating obligation during the 8 years before the transfer was made.

76. An avoidable intentionally fraudulent transfer is made "with actual intent to hinder, delay, or defraud" a creditor of the transferor. California Civil Code § 3439.04.

77. The factors defined in California Civil Code § 3439.04(b)(1), (3), (4), (7), (8), (9), and (10) that the Court may consider in determining actual intent are present in this case: (a) Warren and Vicky are insiders; (b) Debtors concealed the transfer; (c) the transfer was made after threat of enforcement by IRS; (d) Debtors' interest in their principal asset, 2809 Club Drive, was concealed; (e) Debtors received no value in exchange for the transfer; (f) Debtors were insolvent; (g) Debtors incurred a substantial debt to IRS before the transfer. California Civil Code § 3439.04(b)(1), (3), (4), (7), (8), (9), and (10).

78. Trustee has standing to recover the transfer under state law because on the petition date, IRS held an allowable unsecured claim against Debtors' bankruptcy estate. 11 U.S.C. §544(b)(1).

79. From an initial transferee, Trustee may recover "the property transferred, or, if the court so orders, the value of such property." 11 U.S.C. §550(a)(1).

80. Since Warren and Vicky have consumed the re-finance proceeds, and since Warren and Vicky were active participants in Debtors' fraud, principals of fairness require a money judgment be issued in favor of Trustee in the sum of $48,590.33, plus interest thereon at the California legal rate of 10% per annum, from October 21, 2002 through the date of entry of judgment.

NOW, THEREFORE, IT IS ORDERED as follows:

Judgment shall be entered declaring that Warren and Vicky have no ownership interest in 2809 Club Drive. It is further ordered that judgment shall be entered, in favor of Trustee,

compelling Warren and Vicky to turnover 2809 Club Drive as property of Debtors' bankruptcy estate. It is further ordered that judgment be entered against Warren and Vicky for damages in the amount of $48,590.33 plus interest thereon at the rate of 10% per annum from October 21, 2002, through the date of entry of judgment.

Dated: Jan 8, 2008

Honorable Richard T. Ford
UNITED STATES BANKRUPTCY COURT JUDGE